IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **KO IWASAKI**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:24-cv-00164-L** |
| | § | |
| **P&G RARE VIOLINS, INC.** | § | |
| **("d/b/a BEIN & FUSHI, INC.")** | § | |
| **and BEN-DASHAN, INC.**, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants Ben-Dashan Inc. ("BDI") and P&G Rare Violins, Inc.'s ("P&G") Motion to Dismiss ("Motion to Dismiss") (Doc. 24), filed March 4, 2024, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3) and 12(b)(6). On May 14, 2024, the court referred Plaintiff Ko Iwasaki's ("Plaintiff" or "Mr. Iwasaki") Opposed Motion for Leave to Amend Complaint ("Motion for Leave") (Doc. 29) to Magistrate Judge Rebecca Rutherford (Doc. 37) for hearing, if necessary, and to submit to the court proposed findings and recommendations for disposition of the Motions (Docs. 24 and 29). On June 3, 2024, she granted the Motion for Leave (Doc. 40). The United States Magistrate Judge filed her Findings, Conclusions, and Recommendation ("Report") (Doc. 41) on December 13, 2024, recommending that the court **grant** the Motion to Dismiss pursuant to 12(b)(2), **transfer** this action to the United States District Court for the Northern District of Illinois (Eastern Division), and **decline** to consider the Motion to Dismiss under Rules 12(b)(3) and 12(b)(6).

No objections to the Report have been filed, and the 14-day period to object after service of it has expired. Fed. R. Civ. P. 72(b)(1)(2); 28 U.S.C. § 636(b)(1)(C). The court, after

considering the Report, Third Amended Complaint, Motion to Dismiss, record, and applicable law, **accepts** the Report **in part** and **rejects** it **in part.** The court **accepts** the Report insofar as it relates to the factual and legal analysis. The court **rejects** the Report insofar as it recommends that the court grant the Motion to Dismiss.

I.    **Factual and Procedural History**

On October 5, 2023, Mr. Iwasaki filed Plaintiff's Original Petition ("Petition") in the 44th Judicial District Court of Dallas County, Texas, asserting claims for fraud, gross negligence, and violations of the Texas Deceptive Trade Practices Act ("DTPA"). Doc 1-5. This action was removed to federal court on January 22, 2024 (Doc. 1), pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. On June 3, 2024, Mr. Iwasaki filed Plaintiff's Third Amended Complaint ("Third Amended Complaint") (Doc. 40), which is the operative pleading. The lawsuit between the parties arises from the sale of an antique cello bow (the "Bow") made by renowned bow-maker Francois Xavier-Tourte. Report 2. In his Third Amended Complaint, he brings claims for breach of contract, negligent misrepresentation, negligence, gross negligence, fraud, fraud by non-disclosure, and violations of the DTPA. *Id.* (citing Doc. 40).

In 2016, Mr. Iwasaki indicated that he wanted to purchase the Bow from Gabriel Ben-Dashan ("Mr. Ben-Dashan"), the president of BDI and P&G and part owner, controlling manager, and/or principal decision-maker of Bein & Fushi prior to P&G's purchase of substantially all of Bein & Fushi's assets in 2021. *Id.* at 3- 4 (citation omitted). Mr. Ben-Dashan let him borrow the Bow and take it from Chicago back to his home in Dallas, Texas, to test it, to which he agreed and did. *Id.* (citation omitted). On behalf of BDI and Bein & Fushi, Mr. Ben-Dashan negotiated the sale of the Bow over the telephone in two separate states. *Id.* (citation omitted). During the call, he told Mr. Iwasaki that the sales price accounted for a passing of title,

appraisal services, and certificates of authenticity, which Mr. Ben-Dashan knew was false. *Id.* (citation omitted). Relying on these representations, Mr. Iwasaki agreed to purchase the Bow. *Id.* at 5 (citation omitted). Mr. Ben-Dashan did not inform Mr. Iwasaki that Defendants did not have title to the Bow. *Id.* (citation omitted). In May 2016, he received an invoice stating that he owed $275,000 with an initial deposit due immediately and the remaining $250,000 to be paid by June 17, 2016. *Id.* (citation omitted). "Enclosed with the invoice was an insurance appraisal, signed by Gabriel Ben-Dashan, wherein Bein & Fushi determined that the Bow's replacement value and amount of insurance coverage were $350,000." *Id.* (citation omitted).

Upon receipt of the invoice, Mr. Iwasaki sent a check to Bein & Fushi for the initial deposit wire and transferred the remaining balance shortly thereafter. *Id.* at 6 (citation omitted). "In the Certificate of Authenticity, Bein & Fushi represented that the Bow bore no marks of ownership." *Id.* (citation omitted). "More than five years later, on January 30, 2023, Iwasaki received an e-mail from the U.S. Department for Homeland Security (DHS), informing him that it was strongly believed that the Bow had been stolen from Lauxerrois, its legal owner." *Id.* (citation omitted). Before being e-mailed by the DHS, he had no knowledge that the Bow was possibly stolen and that BDI and Bein & Fushi did not have good title. *Id.* (citation omitted). "On or about April 14th of 2023, [Mr.] Iwasaki's counsel signed a stipulation with the District Attorney of the County of New York (DANY) acknowledging the Bow's status as stolen property and waived all claims related to the Bow as to the DANY or the DHS under federal law." *Id.* at 6-7 (citation omitted). As a result of this stipulation, the DHS took the Bow. *Id.* at 7 (citation omitted). The Bow was returned to its owner, and Mr. Iwasaki has not received compensation. *Id.*

## II.     Magistrate Judge's Report  (Doc. 41)

Magistrate Judge Rutherford determined that the court lacks jurisdiction over P&G and BDI regarding any claims. Report 12.

In Defendants' Motion to Dismiss, they argue that Mr. Iwasaki failed to plead successor liability. The magistrate judge agreed and permitted him to file his Third Amended Complaint to cure the deficiencies relating to successor liability. *Id.* at 15. In the Report, the magistrate judge first analyzed successor liability. *Id.* She determined that Illinois substantive law applies because Defendants are Illinois corporations. *Id.* at 16. Viewing all nonconclusory factual allegations as true, the magistrate judge determined that Plaintiff pleaded sufficient factual allegations to state a plausible claim that P&G is a continuation of Bein & Fushi and that they constitute a single entity. *Id.* at 18. Accordingly, she treated P&G and Bein & Fushi as the same for jurisdictional purposes. *Id.*

Next, Magistrate Judge Rutherford analyzed whether the court has personal jurisdiction over each Defendant. *Id.* at 19. She determined that as an initial matter, the court "does not have general jurisdiction over any Defendant in this case because no Defendant is essentially 'at home' in Texas." *Id.* (citations omitted). The magistrate judge notes that despite all of the claims arising from similar facts, the minimum contacts test differs for some claims. *Id.* at 20. For the breach of contract claim, she determined that negotiating a contract on the telephone with an entity in the forum state is insufficient for purposeful availment to establish specific jurisdiction. *Id.* at 23 (citation omitted). Next, she analyzed the breach of contract claim for each Defendant. Regarding P&G, she determined that Mr. Iwasaki "failed to carry his burden of making out a prima facie case that P&G is subject to the [c]ourt's specific jurisdiction with respect to his breach-of-contract claim." *Id.* at 26. Similarly, the magistrate judge determined that Mr. Iwasaki

"failed to carry his burden of making out a prima facie case that BDI is subject to the [c]ourt's specific jurisdiction with respect to his breach-of-contract claim." *Id.* at 28.

Third, Magistrate Judge Rutherford analyzed his fraud claims. *Id.* She determined that Mr. Iwasaki alleges that Gabriel Ben-Dashan and Paige Ben-Dashan made representations while knowing of their falsity or recklessly without knowledge of their truth. *Id.* at 29 (citations omitted). The magistrate judge determined that neither Gabriel Ben-Dashan nor Paige Ben-Dashan is a party to this action, and that Mr. Iwasaki "failed to provide any evidence that demonstrates that P&G or BDI, themselves, made any misrepresentations or had any personal contacts with Iwasaki in Texas related to the negotiation of the Bow's sale." *Id.* As a result, the magistrate judge addressed whether Gabriel Ben-Dashan's or Paige Ben-Dashan's Texas contacts may be imputed by either Defendant. *Id.* at 30. Further, the magistrate concluded that "the court need not decide whether Texas law does, in fact, apply because the key inquiry under the laws of Texas and Illinois is whether the principal exercises 'control' over the purported agent." *Id.* n. 7 (citing *In re Chinese Manufactured Drywall Prod. Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014) (citations omitted)). She determined that Mr. Iwasaki's Third Amended Complaint included conclusory statements with no specific facts or evidence to support his allegations of imputation by virtue of an agency relationship. *Id.* at 31-32 (citations omitted). The magistrate judge determined that merely asserting that Defendants, through Gabriel Ben-Dashan and Paige Ben-Dashan, made false representations is not enough for the court to impute their contacts to the Defendants. *Id.* at 31. Accordingly, she recommended that for the purpose of personal jurisdiction, the court decline to impute the contacts of Gabriel Ben-Dashan and Paige Ben-Dashan to P&G and BDI. *Id.* at 32.

Next, addressing his DTPA claim, the magistrate judge determined that for the same reasons set forth in the breach-of-contract discussion, there are insufficient minimum contacts by P&G or BDI for the DTPA claim. *Id.* at 33. Finally, the magistrate judge analyzed Plaintiff's negligence-based claims. She concluded that neither Defendant is alleged to have committed any negligent act within Texas. *Id.* at 34. The magistrate judge determined that the alleged tortious conduct appears "as nothing more than untargeted negligence, which cannot establish purposeful availment under the effects test." *Id.* (citing *Trois v. Apple Tree Auction Ctr., Inc.*, 882 F.3d 485, 489 (5th Cir. 2018)). Accordingly, she determined that Plaintiff did not carry his burden of making out a *prima facie* case that Defendants are subject to the court's specific jurisdiction with respect to his negligence-based claims.

The magistrate judge recommends that, in the interest of justice, the court should transfer the case to the Northern District of Illinois rather than dismiss it. *Id.* at 35. She concluded that the witnesses, evidence, and Defendants can be found in the Northern District of Illinois *Id.*

### III. Conclusion

Having considered the Report, Third Amended Complaint, Motion to Dismiss, record, and applicable law, the court **accepts** the Report **in part** and **rejects** it **in part.** The court **accepts** the Report insofar as it relates to the factual and legal analysis. The court **rejects** the Report insofar as it recommends that the court grant the Motion to Dismiss.

While the court agrees that it lacks jurisdiction over Defendants BDI and P&G, rather than dismiss the action against them, the court **determines** that this action should be and is hereby **transferred** to the United States District Court for the Northern District of Illinois (Eastern Division), pursuant to 28 U.S.C. §§ 1631 and 1406(a), and **directs** the clerk of court to effect the transfer in accordance with the usual procedure. Further, because the court lacks

personal jurisdiction, it **declines** to consider the Motion to Dismiss (Doc. 24) under Rule 12(b)(2), 12(b)(3), or 12(b)(6).

As a final act, the court addresses Local Civil Rule 62.2. This rule provides as follows: "Unless all affected parties consent to the transfer, an order that transfers a case to a district court outside of the Fifth Circuit is stayed for 21 days from the date the order is entered on the docket." *Id.*

The court *expressly determines* that this rule is inapplicable to this case. First, no affected party has objected to the transfer recommended by the magistrate judge. The time to object has expired; thus, all objections are waived.

Second, the court determines that Local Civil Rule 62.2 unnecessarily hampers and impedes the court from exercising its discretion, as none of the applicable statutes or Federal Rules of Civil Procedure even suggest, much less require, that an action falling within the purview of Local Civil Rule 62.2 be stayed for any period of time.

Third, Local Civil Rule 62.2 attempts to create an avenue for litigants to appeal to the Fifth Circuit for appellate review of district court transfer orders. The jurisdiction of a federal court to exercise appellate review is established by Congress and the United States Supreme Court, not a district court.

Finally, Local Civil Rule 83.1 provides, "Notwithstanding the local civil rules, a presiding judge may direct the parties to proceed in any manner that the judge deems just and expeditious." Given that the Motion to Dismiss has been pending since March of this year, the just and expeditious thing to do is to order that this action not be stayed for 21 days. For all of the reasons previously stated, the court **directs** the clerk of court to transfer this action to the previously mentioned **district and division forthwith, and that the transfer not be stayed.**

**It is so ordered** this 6th day of January 2025.

                                              Sam A. Lindsay
                                              United States District Judge